Anthony MIONE, Petitioner,

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 1, 1997.
Decided Feb. 23, 1998.

Kent D. Watkins, Saint Clair, for petitioner.

Seth A. Mendelsohn, Harrisburg, for respondent.

Before COLINS, President Judge, and LEADBETTER, J., and JIULIANTE, Senior Judge.

LEADBETTER, Judge.

Anthony Mione petitions for review of an administrative order of the Pennsylvania Board of Probation and Parole (Board), which denied petitioner's request for administrative relief from the Board's recommitment order. We affirm.

In 1989, petitioner was sentenced to a minimum term of three years and a maximum term of fifteen years imprisonment for the crimes of aggravated assault, arson, and possession of an instrument of crime. After serving his minimum sentences petitioner was paroled, and on March 31, 1992, he was released from prison.

While on parole, petitioner began using heroin on a regular basis. The Board charged him with a technical violation of a general condition of parole, failure to abstain from the use of controlled substances ("general condition 5(a)").[1] Petitioner also acquired a rifle and was arrested by federal authorities for possession of a firearm by a felon. On July 30, 1995, he pleaded guilty to the new federal charge and was sentenced to serve forty-eight months in a federal institution. Consequently, the Board recommitted petitioner as both a technical parole violator (heroin use) and as a convicted parole violator (firearms violation). In its recommitment order, the Board required petitioner to serve twelve months backtime for the technical violation, and twenty-four months backtime for the direct violation. This backtime was aggregated for a total of thirty-six months. His request for administrative relief was denied by the Board. This appeal followed.

Petitioner challenges the Board's determination to impose consecutive periods of backtime for the two violations. Initially, it should be noted that this court has sanctioned the aggregation of backtimes for technical and direct violations. *Gundy v. Pennsylvania Board of Probation and Parole*, 82 Pa.Cmwlth. 618, 478 A.2d 139 (1984).[2] Nonetheless, petitioner claims that the Board's action denied him equal protection of the laws in violation of the United States Constitution. Petitioner states in his brief that "numerous revocation decisions" evidence that the Board has adopted a policy of running backtime for technical violations concurrent with the backtime for revocations on new convictions.

We disagree with petitioner's constitutional argument for a number of reasons. First, there is no evidence in the record to support his assertion regarding other decisions, let alone any "policy." This court will not address arguments for which no record basis exists. *Licensed Bev. Ass'n of Philadelphia v. Board of Education*, 680 A.2d 1198, 1201 n. 6 (Pa.Cmwlth.1996). Moreover, even if his allegations were factually supported, he has failed to state a claim for denial of equal protection as a matter of law. The gravamen of petitioner's claim is that "numerous" other prisoners were treated more leniently than he. This in and of itself, even if proven, is of no moment. The Board is allowed, indeed mandated, to consider individual circumstances when determining how much backtime to impose or whether recommitment should occur. 37 Pa.Code § 75.1(b)–(c). As was noted with respect to a similar claim, "[I]t is difficult to believe

1. 37 Pa.Code § 63.4(5)(i).

2. In *Gundy*, we held that aggregating separate backtime periods for technical and direct violations based upon the same conduct did not violate the double jeopardy clause. Later, the Pennsylvania Supreme Court upheld this constitutional determination, but invalidated the practice on the basis that the statute prohibited the

finding of a technical violation for conduct leading to a conviction. *Rivenbark v. Pennsylvania Board of Probation and Parole*, 509 Pa. 248, 501 A.2d 1110 (1985). Here, of course, the heroin use did not result in a conviction, and was entirely separate conduct from the weapons offense.

that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics." *Rowe v. Cuyler*, 534 F.Supp. 297, 301 (E.D.Pa.1982), *aff'd without op.*, 696 F.2d 985 (3d Cir.1982).

■ The relevant inquiry, is not whether others were treated differently, but whether the Board had a rational basis for its action. Petitioner does not claim that the board discriminated against him because of racial bias, or based upon some other suspect classification.[3] Nor does the Board's determination of when petitioner will again be eligible for parole implicate any fundamental constitutional right.[4] State action "that does not affect a suspect category or infringe on a fundamental constitutional right 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' The state decision-makers need not actually articulate the purpose or rationale supporting the classification; nor does the state have any obligation to produce evidence to sustain the rationality of its decision." *Donatelli v. Mitchell*, 2 F.3d 508, 515 (3d Cir.1993), *quoting FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) (citation omitted). Here, the seriousness of the offenses, assaultive behavior and unlawful firearms possession, in combination with the technical violation, admitted heroin use, provide an ample basis for the Board's action. Accordingly, petitioner's constitutional claim is without merit.

Next, petitioner contends that he was improperly recommitted beyond the presumptive range for his new criminal conviction. This occurred, it is contended, because the Board erred in analogizing his federal conviction to a conviction under Pennsylvania's Uniform Firearms Act of 1995, 18 Pa.C.S. § 6105(a)(1), rather than to Pennsylvania's law against possessing instruments of crime, 18 Pa.C.S. § 907(a).[5]

The presumptive ranges of parole backtime to be served if a parolee is convicted of a new criminal offense are set forth at 37 Pa.Code § 75.2. The ranking of crimes listed in 37 Pa.Code § 75.2 is not intended to be exhaustive, and the most closely related crime category in terms of severity and the presumptive range is followed if the specific crime which resulted in conviction is not contained within the listing. 37 Pa.Code § 75.1(e); *Simpson v. Pennsylvania Board of Probation and Parole*, 124 Pa.Cmwlth. 544, 556 A.2d 542, 543 (1989).

Petitioner was convicted of a violation of the federal firearms statute, which provides:

It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . .

to ... possess ... any firearm....

18 U.S.C.S. § 922(g). This crime is not mentioned in the list set forth at 37 Pa.Code § 75.2. Thus, the most closely related crime category listed applies.

Petitioner argues that his federal conviction is most closely related to a violation of 18 Pa.C.S. § 907(a), which makes it unlawful

---

**3.** Indeed, petitioner does not claim that he was treated more harshly because of any classification at all. He simply claims that the Board acted arbitrarily in treating him more severely than others. Such a claim may more properly be characterized as a due process challenge than an equal protection claim. This distinction is without significance here, however. The rational basis which in this case defeats petitioner's equal protection argument similarly negates any claim that the Board acted arbitrarily and capriciously in violation of petitioner's due process rights.

**4.** "There is no constitutional or inherent right of a convicted person to be conditionally released

before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right...." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979).

**5.** The presumptive range for a violation of the Pennsylvania Uniform Firearms Act is eighteen to twenty-four months, whereas the presumptive range for a possession of instruments of crime conviction is only six to twelve months.

to possess "any instrument of crime with intent to employ it criminally." The Board concluded that a violation of the federal firearms statute, however, is most closely related to a conviction under 18 Pa.C.S. § 6105, which provides that "[a] person who has been convicted of an offense [relating to aggravated assault or relating to arson] . . . shall not possess . . . a firearm in this Commonwealth."

Both 18 U.S.C.S. § 922(g) and 18 Pa. C.S. § 6105 disable persons *convicted of felonies* from lawful possession of a firearm. On the other hand, 18 Pa.C.S. § 907(a) addresses itself to a different group of persons, i.e., all persons possessing an instrument of crime with intent to employ it criminally. Accordingly, we hold that the Board did not err in analogizing petitioner's federal conviction to a conviction under 18 Pa.C.S. § 6105.

The order of the Board is affirmed.[6]

### ORDER

AND NOW, this 23rd day of February, 1998, the order of the Pennsylvania Board of Probation and Parole is hereby affirmed.

---

**6.** We have considered all points set forth in the statement of questions involved or suggested thereby. The additional arguments raised by petitioner in his brief are waived. Pa. R.A.P. 2116(a); *Coraluzzi v. Commonwealth*, 105 Pa. Cmwlth. 305, 524 A.2d 540 (1987). Even if the issues had not been waived, they are without merit. The Board's regulation promulgated at 37 Pa.Code § 75.3(f), when read in light of 37 Pa.Code § 75.3(e) and 37 Pa.Code § 75.4, does not imply that a technical violation of a general condition must be applied to run concurrently with other backtime. In addition, petitioner was not denied due process even though the Board had verification of his federal conviction more than 120 days prior to his revocation hearing. The 120 day period began to run on either December 8, 1995 (date on which federal authorities temporarily released petitioner to state custody) or January 4, 1996 (date petitioner was returned to a state correctional facility). The revocation hearing held on February 22, 1996 was held within 120 days of either date. Thus, the hearing was not untimely.